FISHER, Circuit Judge,
dissenting:
I respectfully dissent because the majority disregards the plain meaning of “for” in 11 U.S.C. § 523(a)(19) and misconstrues Sherman’s role as a so-called “honest but unfortunate” debtor. The majority holds that a debt is only “for the violation of any of the Federal securities laws,” § 523(a)(19)(A)(i), when the debtor committed the violation. Maj. Op. 1012. The word “for” carries no such limitation. A debt is also “for” a violation of the securities laws when it is an obligation to return the proceeds of the violation being held in trust for the wrongdoer — which describes Sherman’s debt. The word “for” has many meanings, but as the majority concedes, one of them is “because of,” “on account of,”[1] “as a result of,”[2] “having (the thing mentioned) as a reason or cause.”[3] In context, that is plainly how § 523(a)(19) uses the preposition. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“Ambiguity is a creature not of definitional possibilities but of statutory context....”). Causation is not the only possible meaning of “for,” but it is the most ordinary and natural one and thus the controlling one. See Engine Mfrs. Ass’n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) (“Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.”) (quoting Park ’N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (internal quotation marks omitted)); United States v. Alvarez-Sanchez, 511 U.S. 350, 357, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (holding that when a term “is not defined in the statute, we must construe the term ‘in accordance with its ordinary or natural meaning.’ ”) (quoting FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).
The majority acknowledges that my plain reading is plausible, but then attempts to undermine it with various flawed theories. Principally, the majority relies on the proposition that it would be best if “for” had a different meaning, because that would better suit the bankruptcy policy that honest debtors deserve a fresh start. “With a plain, nonabsurd meaning in view, we need not proceed in this way.” Lamie v. U.S. Trustee, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Whatever the majority’s conception of the competing policy concerns in § 523(a)(19), “[o]ur unwillingness to soften the import of Congress’ chosen words even if we believe the words lead to a harsh outcome is longstanding.” Id. Nevertheless, the majority decides to read words into the statute, resulting “ ‘not [in] a construction of [the] statute, but, in effect, an enlargement of it *1020 by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.’ ” Id. (alterations in original) (quoting Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926)). In reaching to interpret the statute to reflect the “best” policy, the majority misconstrues the plain text, distorts the statutory structure and actually defeats the proper objectives of bankruptcy policy and the securities laws.
The majority opinion’s first flaw is its assertion that “we cannot say that Sherman owes the debt ‘in requittal of fraudulent conduct [because] Sherman’s debt results from the fact that he never ‘earned’ the money he owes, and not because he committed any wrongdoing.” Maj. Op. 1013. It does not matter whether Sherman’s debt is “in requittal of’ a securities law violation because that is not what “for” means in § 523(a)(19); but even granting the majority its definition of “for,” there is no dilemma. One certainly can requite a debt for a violation he did not commit if he is a nominal defendant holding money in trust for the violator and has been ordered to turn over the money.[4] As acknowledged by the majority and explained below, a nominal-defendant disgorgement judgment like that owed by Sherman is premised on the nominal defendant’s lack of legitimate claim to the money subject to disgorgement.[5] Maj. Op. 1012. Sherman does not owe the SEC simply because he never earned the advance fees from his client; rather, he owes the SEC because he held the proceeds of fraud in trust. The money Sherman owes was never his own and he must disgorge it to the SEC because the owner would have been required to disgorge it had the money not been held in trust by Sherman.
The majority opinion’s second flaw is to rely on precedent to suggest that reading “by the debtor” into the statute is advisable, when none of the precedent actually argues for that result, interprets the word “for,” or otherwise refutes the logic of recognizing Sherman’s debt as one “for” violations of the securities laws. Although we have interpreted the exception from discharge “for money ... obtained by ... false pretenses, a false representation, or actual fraud,” 11 U.S.C. § 523(a)(2)(A), to require that the “debtor made [false] representations,” In re Sabban, 600 F.3d 1219, 1222 (9th Cir.2010) (quoting In re Hashemi, 104 F.3d 1122, 1125 (9th Cir.1996)) (internal quotation marks omitted), there is no indication that our precedent ever considered the possibility of a nominal-defendant disgorgement judgment. Moreover, the “only issue” in Sabban — the majority’s chief precedent — was whether a particular state court judgment was proximately caused by a false representation. Id. at 1223. Even less relevant are the majority’s cases on the exception from discharge “for fraud or defalcation while acting in a fiduciary capacity.” 11 U.S.C. § 523(a)(4). In In re Cantrell, 329 F.3d 1119 (9th Cir.2003), there was no eligible fiduciary relationship • between any two parties, so we did not consider whether the debtor needed to be the fiduciary. See id. at 1127. Having not confronted the problem of nominal-defendant disgorgement, *1021 this holding is simply inapposite and should not affect our analysis.
To the extent there is any tension between the plain meaning of § 523(a)(19) and our interpretations of other subsections of § 523, the canon of statutory construction that favors consistent interpretation of parallel language cannot trump § 523(a)(19)’s plain meaning. See BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (“The preeminent canon of statutory interpretation requires us to ‘presume that the legislature says in a statute what it means and means in a statute what it says there.’ ”) (quoting Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)) (alteration omitted); Garcia v. United States, 469 U.S. 70, 74, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (describing a canon of construction as “only an instrumentality for ascertaining the correct meaning of words”) (quoting Harrison v. PPG Indus., Inc., 446 U.S. 578, 588, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)) (internal quotation marks omitted). If we look to the text of § 523 rather than our glosses on it, we see that Congress knew how to explicitly require conduct “by the debtor,” compare § 523(a)(19), with § 523(a)(6), and the accretion of faulty interpretations cannot obscure that fact. See Patterson v. Shumate, 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (imposing “an ‘exceptionally heavy* burden of persua[sion]” to overcome clear text in the Bankruptcy Code) (quoting Union Bank v. Wolas, 502 U.S. 151, 156, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991)); K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (“In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.” (emphasis added)). We should not disregard the plain meaning of § 523(a)(19) because past interpretations of different statutes in cases confronting dissimilar facts may implicitly suggest a different outcome.[6]
The majority opinion’s third flaw is to mistake the relationship between securities and bankruptcy policy in § 523(a)(19). The majority’s discussion of policy concerns fails to mention that “[djisgorgement plays a central role in the enforcement of the securities laws.” SEC v. Gemstar-TV Guide Int’l, Inc., 401 F.3d 1031, 1047 (9th Cir.2005) (en banc) (quoting SEC v. Rind, 991 F.2d 1486, 1491 (9th Cir.1993)) (internal quotation marks omitted). Disgorgement is an equitable remedy for fraud, based on the truism that the violator “has no right to retain the funds illegally taken from the victims.” SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1113 (9th Cir.2006) (quoting SEC v. Colello, 139 F.3d 674, 679 (9th Cir.1998)) (internal quotation marks omitted). The remedy “is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable.” Id. (quoting SEC v. First Pacific Bancorp, 142 F.3d 1186, 1191 (1998)) (internal quotation marks omitted). The SEC’s efforts to deter securities violations “would be greatly undermined if securities law violators were not required to disgorge illicit profits.” Gemstar-TV, 401 F.3d at 1047 (quoting Rind, 991 F.2d at 1491) (internal quotation marks omitted). Accordingly, where the ill-gotten gains are held *1022 by a third-party “in a subordinate or possessory capacity,” Colello, 139 F.3d at 676 (quoting SEC v. Cherif, 933 F.2d 403, 414 (7th Cir.1991)) (internal quotation marks omitted), “the SEC may name [such] a non-party depository as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of the underlying fraud,” id. at 677. See also SEC v. Cavanagh, 155 F.3d 129, 136 (2d Cir.1998) (“Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.”).
Critically, a nominal defendant by definition “has no legitimate claim to the disputed property,” Colello, 139 F.3d at 676, and is joined “ ‘purely as a means of facilitating collection,’ ” id. (quoting Cherif, 933 F.2d at 414) (internal quotation marks omitted). See also CFTC v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 191-92 (4th Cir.2002) (quoting Colello); Cherif, 933 F.2d at 414 (“A ‘nominal defendant’ is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation.”). “The paradigmatic nominal defendant is ‘a trustee, agent, or depositary,’ ” Colello, 139 F.3d at 676 (quoting Cherif, 933 F.2d at 414), or “bank ... [that] has only a custodial claim to the property,” id. at 677.[7]
A nominal defendant’s lack of legitimate claim to the money subject to disgorgement has powerful consequences in bankruptcy. If a “debtor does not own an equitable interest in property ... [it] is not ‘property of the estate,’ ” Begier v. IRS, 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (quoting 11 U.S.C. § 541(a)(1)), and therefore is not available for creditors. See 11 U.S.C. § 726(a) (limiting liquidation to “property of the estate”); In re Cal. Trade Technical Sch., Inc., 923 F.2d 641, 645-16 (9th Cir.1991) (“Bankruptcy law does not view property held in trust by the debtor as property of the estate available for general creditors.”); In re Unicom Computer Corp., 13 F.3d 321, 324 (9th Cir.1994) (“[S]omething held in trust by a debtor for another is [not] property of the bankruptcy estate.”). Whitworth’s money, held by Sherman in trust, is therefore insulated from Sherman’s creditors. The majority thus frustrates the SEC’s enforcement efforts based on a hollow policy argument; pay *1023 ment of the disgorgement judgment would not in fact harm an honest debtor’s “fresh start.” An honest debtor has nothing to fear from a disgorgement judgment — the money owed is shielded from creditors; and he has nothing to gain from a discharge — he has no right to do anything with the money other than disgorge it.[8]
Sherman admits he is not an honest debtor — he spent all of the advance payments from his client, Whitworth Energy. According to the California Rules of Professional Conduct, Sherman was required to keep the “funds belonging in part to a client and in part presently or potentially to [him]” in a trust account. Cal. Rules of Profl Conduct R. 4-100(A)(2). Money held in a client trust account is held in an express trust as the client’s fiduciary. See Banks v. Gill Dist. Ctrs., Inc., 263 F.3d 862, 871 (9th Cir.2001). The attorney cannot claim the advance fees until he earns them. See Brothers v. Kern, 154 Cal.App.4th 126, 64 Cal.Rptr.3d 239, 249 (2007) (holding that “so long as funds were in the client trust account, they were still [the client’s] funds”). Sherman’s debt is to disgorge only the portion of the advance payments from Whitworth that he did not earn and thus did not own. Sherman therefore owes the SEC $581,313.43 of Whitworth’s money,[9]
An accurate appraisal of the policy concerns implicated by this case only reinforces the plain meaning of § 523(a)(19). It is logical that if Whitworth could not have avoided disgorging the money by filing for bankruptcy — which is undoubtedly true — Sherman similarly cannot avoid disgorging Whitworth’s money by filing his own bankruptcy. The majority focuses on Sherman’s lack of personal culpability for a securities law violation, and loses sight of the fact that SEC is trying to prevent discharge of a debt to repay money that never belonged to Sherman. We have already held that Sherman’s disgorgement judgment serves to “further the SEC’s goals of deterring securities laws violations and compensating defrauded investors.” In re Sherman, 491 F.3d 948, 964-65 (9th Cir.2007). Further, the majority admits that Congress enacted § 523(a)(19) to deter securities fraud and compensate victims by preventing wrongdoers from using bankruptcy to avoid disgorging their ill-gotten gains, and yet the majority’s countertextual interpretation of § 523(a)(19) does just the opposite. If the SEC cannot recover Whitworth’s money, some fraction *1024 of the profit from Whitworth’s securities fraud will remain at large and victims of the fraud will go uncompensated.
In sum, I would adhere to the plain language of § 523(a)(19) and affirm Judge Snyder’s sensible decision. A debt is “for” a violation of the securities laws when it is caused by such a violation. Sherman’s debt is caused by a securities law violation because he is legally obligated to disgorge the ill-gotten gains of such a violation that he held in trust for the violator.

. Webster's Third New International Dictionary 886 (2002) (definition 8a, e.g., "shouted ~ joy,” “decorated ~ bravery”).

. American Heritage Dictionary of the English Language 686 (4th ed.2000) (definition 7, e.g., "jumped for joy”).

.Oxford Dictionaries (definition 5, e.g., "[tjhree other men were also jailed for their subordinate roles in the operation”), available at http://english.oxforddictionaries.com (last visited Aug. 5, 2011).

. Requittal is the "act of return or repayment for something.” Webster’s Third New International Dictionary 1929 (2002) (definition 1); see also American Heritage Dictionary of the English Language 1482 (4th ed.2000) (definition 2: defining “requittal” as ”[r]eturn, as for an injury or friendly act”); Oxford Dictionaries (Apr.2010) (defining "requite” as to "make appropriate return for (a favor, service, or wrongdoing)”), available at http:// english.oxforddictionaries.com (last visited Aug. 5, 2011).

. Nominal defendants are also known as "relief defendants.”

. Congress also demonstrated its awareness of the modifier “by the debtor” within § 523(a)(19) itself. To be excepted from discharge a debt must not only be for a violation of the securities laws, but must also “result[ ] ... from” an obligation "owed by the debtor.” 11 U.S.C. § 523(a)(19)(B) (emphasis added). Congress clarified that the debt must be owed by the debtor, but omitted the majority's desired language that the securities violation must be committed by the debtor.

. When I refer to a "nominal defendant” in this dissent, I am referring only to these paradigmatic examples, which all invoke the concept of an express or resulting trust intentionally created by the transferee. See Restatement (Third) of Trusts § 2 (2003) (defining “express trust”); id. § 7 (defining "resulting trust”). Constructive trustees can also be nominal defendants but we need not consider whether a disgorgement judgment against such a defendant would be dis-chargeable. See FTC v. Network Servs. Depot, Inc., 617 F.3d 1127, 1137, 1141-42 (9th Cir.2010) (holding that an attorney was properly ordered to disgorge fees received with knowledge the money was derived from securities fraud); SEC v. Ross, 504 F.3d 1130, 1142-44 (9th Cir.2007) (suggesting that a "mere puppet” or "empty vessel into which the true wrongdoers funneled their proceeds” would be a nominal defendant); CFTC v. Walsh, 618 F.3d 218, 226 (2d Cir.2010) ("The receipt of property as a gift, without the payment of consideration, does not create a 'legitimate claim’ sufficient to immunize the property from disgorgement.”).
Whereas a constructive trust is an equitable remedy to vindicate the fraud victims’ superi- or interest in the property, see Network Sews., 617 F.3d at 1141, Sherman’s debt is the direct result of the wrongdoer’s interest, as explained more fully below — Sherman held the violator’s money in express trust for the violator, and thus must disgorge it because the violator would have been ordered to disgorge it to the SEC absent the transfer to Sherman.

. Nominal-defendant disgorgement is distinguishable from the majority’s hypothetical loan induced by fraud. Maj. Op. 1014-15. The recipient of a loan does not owe a debt because of the fraud of a third party in the loan approval process in the same way that a nominal defendant owes a debt to turn over money belonging to the wrongdoer because of the wrongdoing. Disgorgement of the proceeds of a violation is owed for the violation, whereas repayment of a loan is owed for the loan, not a fraud committed antecedent to the granting of the loan. This is hardly the first time the law has presented a slippery question of causation, but there is a common sense distinction here. The majority's counterintuitive conclusion turns on a linguistic difference between § 523(a)(19) and § 523(a)(2), which excepts from discharge debts "for money ... obtained by ... fraud.” (Emphasis added.) The phrase "obtained by” may sweep as broadly as the majority fears, and impair the fresh starts of honest debtors, but the problem does not extend to § 523(a)(19).

. Sherman alleges the excess payments were agreed to be an interest free loan, in contravention of his ethical duties, and thus he spent them but should not be held accountable to repay the “loan” after his bankruptcy discharge. Although there may have been such an agreement, and thus Sherman may have had a legitimate claim to the money, Sherman did not contest the disgorgement judgment. The district court identified Sherman’s ethical obligations as one basis for his lack of legitimate claim to the money, so I focus on that basis for his nominal defendant status.