**STATE of Alaska, Appellant,**

v.

**Kim Michael COOK, Appellee.**

**No. A–10300.**

Court of Appeals of Alaska.

Nov. 10, 2011.

See also, 49 P.3d 262.

Michael Sean McLaughlin, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellant.

Susan Orlansky, Feldman Orlansky & Sanders, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

The defendant in this case, Kim Michael Cook, was indicted for murder. Cook wished to hire a private defense attorney to represent him in this criminal case, but he was unable to do so because most of his available assets were seized or frozen after a money judgement was entered against him in a contemporaneous civil lawsuit. Accordingly, the superior court appointed the Public Defender Agency to represent Cook.

Cook went to trial and was convicted. About a year and a half later, the Alaska Supreme Court overturned the judgement in Cook's civil case and remanded the civil case to the superior court for further proceedings. (Cook ultimately settled the civil lawsuit.)

After the civil judgement was overturned, Cook filed for post-conviction relief. He contended that the superior court—by issuing the civil judgement that was later overturned—had abridged his rights under the Sixth Amendment. More specifically, Cook argued that the Sixth Amendment guaranteed him the right to hire counsel of his choice, and Cook further argued that, had it not been for the civil judgement and the consequent freezing of his assets, he would have had sufficient funds to hire the private defense attorney in his murder case.

The post-conviction relief court agreed with Cook and set aside his murder conviction. The State now appeals this decision.

We conclude that even though the superior court's actions in the civil lawsuit had the effect of preventing Cook from hiring a private attorney in the murder case, the superior court's actions did not violate Cook's Sixth Amendment right to hire the attorney of his choosing.

True, the judgement in the civil case was overturned on appeal, and in that limited sense it was "improper" (in retrospect) for the superior court to have allowed the civil plaintiff to seize Cook's assets under the authority of that judgement. But Cook's loss of access to these funds was simply the collateral consequence of rulings made by the superior court in the civil case. The superior court's purpose in issuing these rulings was to adjudicate and enforce the rights of the parties in the civil action. This was not a situation where a judge in the criminal case issued a ruling that directly prevented Cook from hiring the attorney of his choosing.

Accordingly, we hold the seizure of Cook's assets pursuant to the civil judgement did not abridge Cook's right to counsel under the Sixth Amendment—and, thus, Cook is not entitled to post-conviction relief.

*Underlying facts*

In May 1999, Kim Michael Cook shot and killed a police officer in Palmer. Shortly after the shooting, Cook was named as the defendant in two different lawsuits: a criminal prosecution for murder initiated by the State of Alaska (*State v. Cook*), and a civil lawsuit for wrongful death initiated by the police officer's estate (*Rowland v. Cook*).

Cook failed to respond to the civil lawsuit, and in late June 1999 the superior court entered default judgement against Cook for

slightly over 7 million dollars.[1] Armed with this judgement, lawyers for the estate froze Cook's assets, which totaled some $300,000.

In mid-July, Cook finally responded to the civil lawsuit, and he asked the superior court to set aside the default judgement, but the superior court concluded that Cook had failed to establish sufficient reason to set aside the judgement.[2] Cook appealed the superior court's decision to the Alaska Supreme Court, and that civil appeal remained pending while Cook was prosecuted for murder.[3]

Meanwhile, Cook had been trying to hire a defense attorney to represent him in the murder case. In late June 1999, he engaged in preliminary discussions with a prominent Alaska criminal defense attorney. This attorney tentatively agreed to represent Cook, but only if Cook could give the attorney a retainer of $200,000. Cook provided the attorney with authority to take possession of Cook's assets—but the attorney quickly learned that most of Cook's assets were frozen as a result of the default judgement issued in the wrongful death lawsuit. Cook still had unfrozen assets of approximately $92,000, but this was less than half of the retainer that the attorney demanded. Because Cook was unable to come up with the $200,000 retainer, the attorney declined to represent him.

In mid-July, Cook attempted to regain control of his assets by filing a motion in the civil lawsuit, asking the superior court to set aside the default judgement. But as we have explained, the superior court denied this motion. In other words, the court declined to set aside the judgement, and Cook did not regain control of his assets. Consequently, the superior court appointed the Public Defender Agency to represent Cook.

Cook went to trial in October 2000, and he was convicted of first-degree murder.[4]

Approximately a year and a half later (in June 2002), the Alaska Supreme Court decided Cook's civil appeal (i.e., his appeal of the superior court's refusal to set aside the default judgement in the wrongful death action). The supreme court concluded that Cook had presented the superior court with a valid excuse for failing to file a timely response to the wrongful death lawsuit, and thus the superior court should have granted Cook's request to set aside the default judgement.[5] However, the supreme court also concluded that, because Cook had been convicted of murder in the criminal case (while the civil appeal was pending), he could no longer dispute his responsibility for the police officer's wrongful death.[6] Therefore, even though Cook was entitled to re-open the question of damages (i.e., how much money he should be ordered to pay to the officer's estate), the supreme court concluded that there was no good reason to set aside the default judgement on the issue of Cook's liability for the officer's death.[7]

(The wrongful death lawsuit never went to trial because the parties eventually settled the damages portion of the lawsuit. Cook agreed to pay the approximately $300,000 that the estate had previously seized under the default judgement, and the estate agreed to forego any additional compensation.)

*The superior court's decision to grant Cook post-conviction relief*

In 2005, Cook filed a petition for post-conviction relief from his murder conviction. Among Cook's claims for relief, he argued that he was entitled to a new trial because the State unlawfully denied him the right to be represented by the attorney of his choice in the criminal case.

Superior Court Judge Eric Smith agreed with Cook that the default judgement in the

---

1. See Cook v. Rowland, 49 P.3d 262, 263 (Alaska 2002).

2. Id. at 263–64.

3. Id. at 264.

4. This Court affirmed Cook's conviction on direct appeal: Cook v. State, Alaska App. Memorandum Opinion No. 4847 (March 31, 2004), 2004 WL 719771.

5. Cook v. Rowland, 49 P.3d at 264–65.

6. Id. at 266.

7. Id. at 266–67.

civil case had prevented Cook from hiring the private attorney of his choice. Judge Smith further agreed with Cook that, because the default judgement was later overturned by the supreme court, (1) the judgement was improper, (2) Cook should have had access to his money at the time he was attempting to hire the private attorney, and thus (3) Cook's rights under the Sixth Amendment were violated.

On this basis, Judge Smith set aside Cook's murder conviction, and the State now appeals the judge's decision.

Cook acknowledges that the superior court correctly issued the default judgement against him in the first place (because Cook failed to file a timely response to the wrongful death lawsuit). Cook further acknowledges that he would have no valid ground to complain if the superior court had *properly* declined to set aside that default judgement. But as we have explained, the Alaska Supreme Court concluded in *Cook v. Rowland* that Cook had had a good excuse for failing to respond on time to the wrongful death lawsuit, and thus the superior court should have granted Cook's request to set aside the default judgement.

Cook made his request to set aside the default judgement in the civil case in July 1999—more than a year before he went to trial in the murder case. Cook argues that if the superior court had ruled correctly on his request to set aside the default judgement (*i.e.*, if the superior court had set aside the default judgement when Cook first asked for this relief), then Cook would have had access to his money during the days or weeks when he needed it to hire the private attorney to represent him in the murder case. Thus, Cook concludes, the superior court's action— *i.e.*, its failure to set aside the default judgement—wrongfully deprived Cook of his financial capacity to hire the counsel of his choice. And because of this, Cook asserts that he is entitled to a new trial in his criminal case.

Cook concedes that if he were tried anew, he probably would be unable to hire private counsel, and he would end up being represented by the Public Defender Agency again. Cook argues, however, that this is beside the point.

Cook relies on court decisions holding that when a criminal defendant is erroneously deprived of their counsel of choice, this is a "structural" error that requires reversal of the defendant's conviction even when the defendant can not show that the substitution of attorneys prejudiced their case in specific identifiable ways.[8] Based on these decisions, Cook argues that it is irrelevant whether he is again represented by the Public Defender Agency at a second trial, and that it is also irrelevant whether the evidence and the arguments presented at this second trial might turn out to precisely mirror the evidence and arguments presented at his first trial.

*Why we conclude that Cook is not entitled to post-conviction relief*

■ Under the Sixth Amendment to the United States Constitution, a criminal defendant is guaranteed the right to be represented by an attorney of their choosing if the attorney is legally entitled to practice in that jurisdiction, if the attorney is not otherwise disqualified, if the attorney is willing to represent the defendant, and if the defendant can afford to hire the attorney (or the attorney is willing to represent the defendant even though the defendant can not afford to pay).[9]

In Cook's case, the defense attorney whom he contacted was unwilling to represent Cook unless Cook paid him a $200,000 retainer. Cook did not have the money to pay this retainer, so the attorney declined to represent him. Seemingly, then, Cook's inability to secure the services of this attorney had no Sixth Amendment implications.

**8.** *United States v. Gonzalez–Lopez*, 548 U.S. 140, 148, 150–51, 126 S.Ct. 2557, 2563–65, 165 L.Ed.2d 409 (2006); *McKinnon v. State*, 526 P.2d 18, 23–24 (Alaska 1974).

**9.** *Gonzalez–Lopez*, 548 U.S. at 144, 126 S.Ct. at 2561; *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989); *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).

But Cook argues that he was wrongfully deprived of the funds he needed to pay the retainer. Further, Cook argues that this wrongful deprivation was the result of *state action:* to wit, the superior court's erroneous failure to grant his motion to set aside the default judgement in the wrongful death lawsuit. Cook contends that the superior court, through its erroneous ruling, improperly allowed the police officer's estate to continue its hold on his assets, thus preventing Cook from paying the criminal defense attorney's retainer, and thus abridging his Sixth Amendment right to counsel of his choosing.

We note, preliminarily, that even if the superior court had granted Cook's motion to set aside the default judgement, this would not necessarily have meant that Cook would have had sufficient assets to engage, or to retain, the services of the private attorney. Even if Cook had given the attorney a retainer of $200,000, the great majority of this money would still have been unearned. The money would have gone into the attorney's trust account—where, potentially, it would have been subject to garnishment or seizure to pay Cook's debts, as long as it remained Cook's money.[10]

We will assume, however, that if the default judgement in the wrongful death action *had* been set aside, there would have been no other major claims against Cook's assets during the pendency of the murder prosecution, other than the potential cost of defending the wrongful death lawsuit. We will further assume that, if Cook had been faced with the choice of using his money to hire a defense attorney in the criminal case or, instead, using his money to hire a defense attorney in the civil lawsuit, Cook would have chosen to devote his money to the defense of the criminal case.

█ The question, then, is whether the superior court's mistaken failure to set aside the default judgement in the civil lawsuit should be viewed as a wrongful deprivation of, or interference with, Cook's right to hire the defense counsel of his choosing in the criminal case. We conclude that the superior court's action should not be deemed a viola-

tion of Cook's Sixth Amendment right to choose his attorney.

Cook's case does not present an instance where a judge presiding over a criminal case made a ruling directly prohibiting a particular defense attorney from entering an appearance on behalf of a defendant, or prohibiting an attorney from continuing to represent a defendant, or unreasonably refusing to accommodate a defense attorney's schedule when setting the trial date or other important deadlines. Instead, when the superior court initially issued the default judgement against Cook in the civil lawsuit, and when the superior court later denied Cook's motion to set aside that default judgement, the court's purpose was to adjudicate the competing interests of the parties in that civil lawsuit.

It is true that when the superior court denied Cook's motion to set aside the default judgement, one collateral effect of the superior court's ruling was that Cook failed to regain control of his assets—thus leaving Cook without the financial ability to hire the private defense attorney that Cook wanted to represent him in the criminal case. But this was not the point of the superior court's decision—nor (as far as the record reveals) was this even taken into consideration by the superior court when the court denied Cook's motion for relief from his default.

Moreover, when Judge Smith granted post-conviction relief to Cook, he based his ruling, *not* on the fact that the superior court's ruling prevented Cook from regaining control over his assets, but rather on the fact that the superior court's ruling was later declared to be *wrong.* In other words, Judge Smith concluded that, even though the superior court's refusal to set aside the default judgement meant that Cook was unable to regain control over most of his assets, and thus unable to hire the attorney he wished, there would have been no violation of Cook's Sixth Amendment rights if the superior court's ruling had been proper.

This is why Judge Smith viewed the Alaska Supreme Court's decision in *Cook v. Rowland* as "new evidence of a material fact" for

---

**10.** *Brothers v. Kern,* 154 Cal.App.4th 126, 64 Cal. Rptr.3d 239, 249–250 (2007).

purposes of AS 12.72.010(a)(4).[11] Judge Smith wrote:

> [T]he decision of the Alaska Supreme Court overturning the default judgment in [Cook's] civil case was a "material fact" requiring a new trial ... [,] in that the [supreme court's] decision indicated that Mr. Cook had wrongfully been deprived of the funds he needed to hire counsel of his choice....

In Cook's brief to this Court, he adopts this same position. He concedes that he would have no Sixth Amendment claim if the superior court had *rightfully* denied his motion to set aside the default judgement. According to both Judge Smith and Cook, the Sixth Amendment violation in Cook's case was not established until a year and a half after Cook's criminal trial—when, in *Cook v. Rowland,* the Alaska Supreme Court held that the superior court should have set aside the default judgement.

Under this reasoning, a criminal defendant's Sixth Amendment rights would be violated by *any* judgement or order in *any* proceeding if that judgement or order deprived the defendant of the funds necessary to hire a private attorney in a pending criminal case, and if the judgement or order was later overturned for any reason in a subsequent appeal, or in a motion for relief from the judgement.

Thus, under Cook's view of this issue, any judgement directing a person to pay damages for a breach of contract, or to pay back taxes and penalties, or even to pay a fine as punishment for an unrelated crime, would be deemed an abridgement of that person's Sixth Amendment right to counsel of choice in a pending criminal case if (1) the person was forced to satisfy the judgement (or, at least, forced to sequester funds to pay the judgement), and (2) the person's lack of funds prevented the person from hiring a private attorney in the criminal case, or at least the particular private attorney the person would otherwise have chosen, and then (3) the money judgement was later overturned because of a procedural error, or a mistaken evidentiary ruling, or an improper jury instruction.

In terms of guaranteeing a defendant's right to hire the counsel of their choosing in a criminal prosecution, the types of legal error described in the preceding paragraph, and the consequent reversal of the money judgements, would be wholly fortuitous.

When a judge presiding over a civil case makes a ruling on a matter of procedure or evidence, or makes a ruling as to how the jury should be instructed, the judge is normally trying to adjudicate the matter before the court—and not thinking about the possibility that, if a money judgement is ultimately entered against the defendant at the end of the proceeding, this money judgement might hinder or prevent the defendant from hiring their counsel of choice in a separate criminal case. Moreover, even if the judge presiding over the defendant's *criminal* case was aware of the civil case (which is by no means assured), the judge in the criminal case would have no way of influencing the other judge's rulings, nor any way of knowing whether the other judge's rulings would be attacked on appeal—and, if attacked, whether those rulings would be upheld or overturned on appeal.

We conclude that it is illogical and unfair to overturn a criminal conviction under such circumstances, and we do not believe that the Sixth Amendment calls for such a result.

The "structural error" approach taken by the United States Supreme Court in *United States v. Gonzalez–Lopez*[12] and by the Alaska Supreme Court in *McKinnon v. State*[13] is premised on the assumption that the rule of structural error will have a deterrent effect—that it will cause judges to be extremely cautious whenever they are considering a ruling that will prevent a defendant from employing the attorney of their choosing in a

---

**11.** This statute authorizes a person convicted of a crime to seek post-conviction relief on the ground that "there exists evidence of material facts, not previously presented and heard by the court, that requires vacation of the [person's] conviction or sentence in the interest of justice".

**12.** 548 U.S. 140, 148, 150–51, 126 S.Ct. 2557, 2563, 2564–65, 165 L.Ed.2d 409 (2006).

**13.** 526 P.2d 18, 23–24 (Alaska 1974).

criminal case. But this assumption makes sense only when (1) the challenged ruling is made by a judge who is aware of the effect that the ruling will have on the defendant's ability to employ their chosen attorney, and only when (2) the effect of the ruling on the defendant's ability to employ the attorney is a factor that is legally relevant to the judge's decision.

In Cook's case, even though the superior court's ruling effectively prevented Cook from paying the attorney's retainer, this consequence was irrelevant to the court's decision—irrelevant to the question of whether Cook had demonstrated good cause for his failure to file a timely response to the wrongful death lawsuit.

Accordingly, we hold that Judge Smith committed error when he granted post-conviction relief to Cook in this case.

*Conclusion*

The judgement rendered by the superior court in Cook's post-conviction relief litigation is REVERSED.