Filed 8/29/23  Woodlief v. Woodlief CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MILES ARCHER WOODLIEF,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JENNIFER LYNN WOODLIEF,<br><br>    Defendant and Respondent. | A166235<br><br>(Marin County Super. Ct. No. FL095748) |

Plaintiff and appellant Miles Archer Woodlief (Father) appeals from the trial court's order fixing and liquidating child support arrears.  Following an evidentiary hearing, the trial court fixed the amount of child support arrears owed by Father to defendant and respondent Jennifer Lynn Woodlief (Mother) at $213,455.  Father contends the trial court erroneously included $205,000 of debt in this amount that was unrelated to Father's child support obligations to Mother.  We find no abuse of discretion and affirm.

## I.  BACKGROUND

Father and Mother finalized their divorce in December 2009.  As part of their marital settlement agreement, Father was ordered to pay Mother $10,000 per month in child support for their then three minor children.[1]

---

[1] The trial court later found that Father and Mother had modified child support by agreement to $9,000 per month as of December 2009.

Throughout the years, the parties maintained a joint bank account (Account) that Father deposited and withdrew funds from, with Mother's permission.[2] Father deposited child support payments into the Account and also deposited and withdrew other funds that were unrelated to child support. Mother kept a running tally of the debt owed to her by Father based on his withdrawals and deposits as well as amounts he purportedly owed in back child support. For example, in September 2017, Mother emailed Father, "you have $205,000 of my $ representing years of back [child support] and other funds that you were 'holding for me in [one of our children's] account.' " In September 2019, Mother emailed Father that his debt to her, including $9,000 in child support for July, August, and September, totaled $344,864.

In March 2020, Mother filed an "OSC [Order to Show Cause] re Contempt" against Father, alleging that Father owed her child support. After finding that "Mother had failed to demonstrate the precise amount of Father's alleged arrearages and had failed to show that any failure to pay child support was willful," the trial court dismissed Mother's OSC with prejudice. Mother subsequently opened a case with the Marin County Department of Child Support Services (DCSS), and DCSS filed a motion to determine support arrearage and set liquidation (Motion). The Motion asked the court to decide (1) "whether Father's repayment to the [Account] comingled support payments with repayment of loans," and (2) "whether Father has a support arrearage and how much that arrearage actually may be."

Father filed an opposition to Mother's request for child support. He argued that he "was more than current with child support" but that he was

---

[2] Though both parties' names appear on the Account's statements, the parties both referred to it as Mother's account.

unable to obtain additional proof of his child support payments per the court's request because his bank could not provide him with missing bank statements. Father included a chart which detailed the child support payments he purportedly made over the years. Father further argued that the parties' use of the Account was complicated by the fact that there were numerous deposits and withdrawals made that were unrelated to child support payments and therefore irrelevant to the subject proceeding.

Mother filed a declaration claiming that Father owed child support arrears in the amount of $759,586 based on her previously filed declarations and bank records. Alternatively, Mother argued that if the trial court intended to rely on her "contemporaneous emails" to determine child support arrears, then the amount owed was $341,864 (after giving Father a credit of $6,000) based on Mother's October 4, 2019 email to Father referencing $347,864 as his total debt.

Following an evidentiary hearing, the trial court fixed Father's child support arrears at $213,455. The court arrived at this figure by taking Mother's calculation of $344,864 as Father's debt as of September 23, 2019 and subtracting $60,409 for an unrelated tax debt, $35,000 as a credit for spousal support Father had paid, and $36,000 in *Jackson* credits.[3] Among other findings, the court found that "Mother and Father engaged in a great many other transactions, including withdrawals and transfers, revealing a complex and commingled system of financial arrangements to which each of them consented." The court found that these transactions were unrelated to child support and that "[o]nce Father made a child support payment, that

---

[3] Under *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 368, a trial court has discretion to give credits against child support arrearages where the obligor has satisfied his or her child support obligation by taking physical custody of the child.

child support remained paid." Accordingly, the court denied "Mother's request to discredit Father's child support payments when Father withdrew or transferred funds." The court noted it reviewed the attachments to DCSS's motion showing each parent's payment history as well as the parties' filed declarations. The court also considered the parties' testimony and arguments made at the hearing.[4]

Father timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review child support orders for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282.) Although broad, "[t]he trial court's exercise of discretion must be 'informed and considered,' [citations] and the court may not 'ignore or contravene the purposes of the law.'" (*Brothers v. Kern* (2007) 154 Cal.App.4th 126, 133.)

Under the abuse of discretion standard, "we review the trial court's legal conclusions de novo and its factual findings for substantial evidence, and we reverse its application of the law to the facts only if it was arbitrary and capricious." (*Swan v. Hatchett* (2023) 92 Cal.App.5th 1206, 1215.) "We cannot substitute our judgment for that of the trial court, but only determine if any judge reasonably could have made such an order." (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128.)

### B. Lack of Citations and Authority in Mother's Brief

We first address Father's argument that Mother's brief should be disregarded because she fails to provide any record citations or legal authority. We agree that a party's failure to provide citations to the record

---

[4] The record does not contain a transcript or settled statement of the hearing.

4

and legal authority to support a contention may be treated as a waiver of that contention on appeal. (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808.) Although Mother fails to provide any record citations or legal authority in her brief, her failure to do so is not fatal because she is the respondent, and the burden ultimately rests upon Father, as the appellant, to affirmatively demonstrate prejudicial error by the trial court. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 70.) Thus, any deficiencies in Mother's brief do "not absolve us of adjudicating the merits of" Father's appeal. (*In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 111, fn. 1 [affirming trial court order despite the respondent's failure to file a brief].)

C. Trial Court Did Not Abuse its Discretion

Father contends that in fixing the amount of child support arrears, the trial court mistakenly included $205,000 of debt owed by Father to Mother that was unrelated to his child support obligations. Father argues that the trial court's discretion "does not really come into play" here because "a mistake was made." We disagree. Father challenges the trial court's *factual* findings that Father's withdrawals from the Account were unrelated to child support and that, putting aside these withdrawals, Father still owed $213,455 in child support arrears. The standard of review is therefore abuse of discretion.

As the appellant, Father failed to meet his burden of showing that the trial court erred in including the $205,000 in its child support arrears calculation. The primary evidence Father cites to in support of his argument is a September 17, 2017 email Mother sent Father which stated, "you have $205,000 of my $ representing years of back [child support] and other funds that you were 'holding for me in [one of our child's] account.'" This does not conclusively support Father's argument that the $205,000 was not debt

5

related to unpaid child support. To the contrary, this email can reasonably be interpreted to mean that Mother believed Father owed her $205,000 in back child support *plus* additional unspecified funds Father borrowed from her and placed into another account. Father also cited to evidence showing that Mother permitted Father to borrow and withdraw funds from the Account. But this fact was not in dispute, and the trial court explicitly held that these withdrawals were unrelated to child support and could not be used to discredit Father's child support payments. Thus, there is no reason to believe that the court mistakenly included any of those withdrawals in its calculation of Father's child support arrears.

Further, substantial evidence supports the trial court's order. First, in calculating Father's child support arrears, the court relied on various documents, including the attachments to DCSS's motion as well as Mother's declarations and attachments. Those attachments included a form declaration signed by Mother which alleged that Father did not make any child support payments in 2013 and 2014 and missed most of the payments in 2015, 2018, and 2019. Mother's July 26, 2021 declaration further alleged that Father owed her "$871,256 in back support" and attached a summary of Father's deposits into and withdrawals from the Account between 2009 and 2019 as support. Meanwhile, Father was unable to produce any bank statements refuting the claims in these documents. As a result, there is substantial evidence to support the court's reliance on the estimate of Father's child support arrears contained in Mother's September 2019 email—which is far less than the amount supported by the documents submitted by DCSS and Mother.

Second, the trial court stated that it "considered the testimony and argument of the parties" at the evidentiary hearing. Father did not provide

6

a transcript or settled statement of the hearing. "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put another way, it is presumed that the unreported [transcript] would demonstrate the absence of error." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) We therefore presume that the transcript of the evidentiary hearing, including the parties' testimony, would have independently supported the trial court's conclusion that Father owed $213,455 in child support arrears as of July 5, 2022.

Based on this record as well as Father's inability to provide additional proof of his child support payments (his missing bank statements), we find no mistake or abuse of discretion in the trial court's order fixing Father's child support arrears at $213,455.

D. <u>Mother's New Requests</u>

In her brief, Mother requests that we (1) correct the trial court's erroneous deduction of $35,000 as a credit for spousal support; and (2) either set a repayment schedule for the $213,455 ordered in child support arrears or return the matter to the trial court to set such a schedule.

"As a general matter, ' "a respondent who has not appealed from the judgment may not urge error on appeal." ' [Citation.] To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants." (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585.) Because Mother did not file a cross-appeal from the trial court's order fixing child support arrears, she has forfeited any challenge to the order seeking affirmative relief. We note, however, that our refusal to consider these challenges in this appeal does not preclude Mother from asking the trial court to set a repayment schedule after remand.

## III. **DISPOSITION**

The trial court's order is affirmed.  Respondent is entitled to recover her costs on appeal.

_____

CHOU, J.

We concur.

_____

JACKSON, P. J.

_____

SIMONS, J.

*Woodlief v. Woodlief* / A166235