Filed 7/18/23 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHARLES SWAN,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>KRYSTLE HATCHETT,<br><br>      Defendant and<br>Respondent. | A163825, A164764<br><br>(Alameda County<br>Super. Ct. No. HF<br>16825795) |

THE COURT:

It is ordered that the opinion filed herein on June 29, 2023, be modified as follows:

1. On page 22, the first sentence in the last paragraph ("The juvenile court's orders are reversed.") is replaced with: "The trial court's orders are reversed."

There is no change in judgment. The parties' stipulation and request, filed on July 12, 2023, is otherwise denied.

Date: _____     _____ P.J.

1

Filed 6/29/23 (unmodified opinioin)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHARLES SWAN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KRYSTLE HATCHETT,<br><br>        Defendant and<br>Respondent. | A163825, A164764<br><br>(Alameda County<br>Super. Ct. No. HF<br>16825795) |

Charles Swan appeals from the trial court's orders denying his request to reduce the amount of child support he pays Krystle Hatchett for their triplets and awarding Hatchett about $10,000 in need-based attorney's fees. On his request to modify child support, Swan contends the trial court erred by casting aside all of his evidence of his income and ignoring other evidence that he had a new child and that Hatchett's income had increased. He further argues the trial court's refusal to consider his evidence of his income for child support purposes conflicts with its finding that he could pay a specific amount of Hatchett's attorney's fees and that the fees award is otherwise infirm. We agree that the trial court's reasons for ignoring all of Swan's evidence lack substantial evidentiary support. We further agree that the award of attorney's fees to Hatchett was improper because it conflicts with its disregard of Swan's evidence. We will therefore

1

reverse the trial court's orders and remand for further proceedings.

BACKGROUND

Swan and Hatchett are the parents of triplets born in 2016. They share joint legal and physical custody of the children.

In November 2017, the trial court issued an order addressing child support. Swan testified from a profit and loss statement that he had prepared for his self-employment as a tax preparer, real estate broker, mortgage broker, and appraiser. The trial court found Swan's bookkeeping was poor, especially for someone who prepared tax returns for a living. Swan testified that his net income as of August 2017 was $40,498. But after adding back certain deductions Swan had taken that the trial court found were personal expenses, the trial court calculated Swan's monthly income to be $9,245 per month, which would amount to $110,940 per year. The trial court ordered Swan to pay child support of $2,350 per month, retroactive to the beginning of 2017, and to pay off the arrears at $350 per month. Hatchett was not working, and the trial court did not impute income to her due to insufficient information.

## I. Swan's Request to Modify Child Support

In September 2018, Swan filed a request to change the child custody and child support order. As relevant here, Swan asked the court to issue a new guideline support order, order Hatchett to seek work in order to provide for the children, and waive interest on certain arrears in his payments.

2

In early 2019, the trial court ordered Hatchett to undergo a vocational evaluation paid for by Swan.  In advance of the hearing on Swan's request, the parties stipulated that Swan was "entitled to a hardship when calculating child support in this matter."

## II. Hearing

The trial court held the hearing on Swan's request on 14 different days between May 2019 and August 2020.  The witnesses were Swan, Swan's financial expert Jeff Stegner, and Hatchett.

### *Swan*

Swan owned three properties on the same street in Fremont.  He rented out two of the houses and divided the third with 60 percent being used for his business and the remainder for his personal living space.

Swan prepared his own tax returns.  He maintains separate personal, business, and rental accounts for his expenses, but he admitted that he sometimes commingled expenses.  Swan explained that when he used the wrong account for an expense, he would make a Post-It note as a reminder to record the expense correctly.  His employee would reconcile his bank statements and Post-It notes, and use receipts when available.  Some expenses such as Costco appeared as both business and personal expenses, and Swan would use Post-Its to divide the expenses.  For meals and expenses, some of which were business-related and some personal, Swan would reconcile his expenses monthly based on

receipts, when available, and memory to avoid deducting personal expenses as business expenses.

Between 2017 and 2018, Swan changed how he reported his rental income on his tax returns. In 2017, Swan had reported his rental income and expenses on Schedule E of his returns and his other business expenses on Schedule C, but in 2018 he combined all of his business expenses together on Schedule C. He changed his reporting methods because he was told his earlier method was incorrect. As a result, the only way to separate out the 2018 expenses for his rental properties from those for the rest of his business would be to engage in a tedious process of categorizing expenses. The categories of expenses on his profit and loss statements did not match the categories on his tax returns.

Swan claimed variously that the IRS had audited him five or eight times and each time the IRS concluded he had underreported his deductions. Swan is conservative in his deductions, such as by claiming a smaller mortgage interest deduction than his lenders reported to the IRS or a lower amount of his auto expenses than the law allows. He does this so that if he is audited he will be owed a refund. As a result of the audits, Swan had a $2.3 million net operating loss on his returns. Swan's expert, Jeff Stegner, later explained that Swan could carry this loss forward on his tax returns so he would not be paying any federal income taxes for quite a number of years, although he would still pay federal self-employment tax.

The rental income on Swan's properties in 2018 was slightly higher than in 2017, but the repairs and maintenance

were significantly higher. Swan said his maintenance expenses were higher in 2018 than 2017 because he was converting them to short-term rentals on Airbnb. He later admitted that the expenses he listed as rental supplies and repair and maintenance in his profit and loss statement included construction costs of placing a shed on each rental property that he worked on converting to rental units. Swan had previously converted the garage at one of the properties into a separate rental unit, which Hatchett had rented from him before the triplets were born. Because of this construction, Swan expanded from having three rental units to six. Still later, Swan revealed that the city had ordered him to cease renting the garage and one of the sheds because they were not up to code. Swan had not obtained any permits for any of the construction. He claimed he was not a contractor and not familiar with the rules and laws governing permits.

Although he works as a real estate appraiser, Swan initially could not give an estimate of the value of any of his properties. He then said the rental properties could possibly be worth $700,000 to $800,000, but he still could not say whether his property that he split between his business and his personal use would be worth more or less than that. Swan could not provide an estimate for how much he owed on the mortgage on his personal property but said it could be less than $500,000. He could not remember whether his mortgage payments for the rental properties had changed between 2017 and 2019.

Swan had declared chapter 11 bankruptcy and was still in bankruptcy when he testified. He was paying back payroll taxes through the bankruptcy for his one W-2 employee. He could not say how much longer he had to make those payments, but he thought it was under 10 years. When Swan filed his income and expense declaration, he did not include in his assets a Charles Schwab retirement account containing about $50,000 or $60,000. Swan explained that the form asked him to list stocks, bonds, and other assets he could sell easily, and he could not sell his retirement assets easily.

Swan's child from another relationship was born around the beginning of 2019. The child's mother, X.H., lives in one of Swan's rental units. X.H. is also one of Swan's employees, working in real estate and as the manager of his office. Hatchett had also managed Swan's office. Swan's new child spends time in the homes of Swan and X.H. For the calendar year of 2018, Swan paid her about $75,000, according to a 1099 form Swan prepared between hearing dates. Swan paid X.H. with cash withdrawals from an ATM, as he had done with other workers as well. Swan kept track of his cash payments to workers with ATM receipts and by memory.

When asked whether he had traveled out of the country with X.H. in 2018, Swan first said he could not recall. When prompted afterwards whether he had traveled with X.H. to Paris and Saint-Tropez, he admitted he had. He initially could not recall who paid for the trip and said it could have been a client, then said he might have paid for it. When he could only find less

6

than $50 in expenses in his own records for the trip, he then said he did not think he had paid for the trip and said it could have been one of his clients who sent him to look for retirement or investment property. He claimed his airfare and hotels were paid for by a client but he still could not recall a specific client. He initially said the trip did not coincide with any special dates or events but then admitted it coincided with X.H.'s birthday.

Swan could not recall taking any other trips out of the country in the prior year, even though he generally took trips between one and 10 times per year, depending on the year, to places like Costa Rica, Panama, and Thailand. He admitted he traveled to Jamaica with X.H. in 2019, within two weeks of X.H.'s birthday. Swan could not recall who paid for the trip to Jamaica, even though it occurred only five months before he testified about it. He also took a business trip to Las Vegas in 2018, the same week as his birthday and the Fourth of July. Swan did not recall who traveled with him.

### *Stegner*

Swan's expert Jeff Stegner testified that he relied on tax returns, bank statements, and a general ledger of transactions Swan provided him, without performing an audit or independently verifying anything beyond matching expenses to bank records and canceled checks. Stegner found Swan's shift to combining his rental and other expenses on his Schedule C to be completely allowable. To calculate Swan's income available for support, Stegner took Swan's net business income as stated on his tax returns, added back the depreciation and certain personal

7

expenses, and for 2018 deducted mortgage principal payments for his rental properties that Swan reported to him. Stegner calculated Swan's income as $3,387 per month in 2017 and $3,643 per month in 2018.

### *Hatchett*

Hatchett secured a job in December 2019 earning $24 per hour for 40 hours per week. After March 2020, Hatchett began receiving pandemic hazard pay that pushed her hourly wage to $36 per hour, or about $75,000 per year.

## III.  Post-hearing proceedings

In October 2020, the parties submitted written closing arguments. In January 2021, the trial court issued a tentative decision finding that Swan had failed to meet his burden of showing a change in his income. The court found Swan's testimony and evidence regarding his income not credible. It rejected Stegner's report because it was based on Swan's non-credible evidence. It also rejected Swan's request to waive interest on his child support arrears. But the trial court ordered the parties to provide additional briefing regarding whether it should modify support based on changes of circumstances during the pendency of Swan's request, including Swan's new child and Hatchett's new income.

After the supplemental briefing, in April 2021 the trial court issued a new tentative statement of decision denying Swan's request to waive interest on arrears and denying his request to modify child support based on his claimed reduction in

8

income, his new child, or Hatchett's new income, in light of the lack of credibility of Swan's evidence of his income.

Swan moved for a new trial. At the hearing on the motion in August 2021, Hatchett made an oral request for need-based attorney's fees. The trial court ordered the parties to submit further briefing regarding Swan's argument that the court was obligated to re-calculate child support based on Hatchett's new income and Swan's new child, using the previous finding of Swan's income if it did not find his new income evidence to be credible.

The trial court continued the next hearing in October 2021 so that Swan and Hatchett could submit updated income and expense declarations. At the final hearing in November 2021, Swan argued the trial court could not find both that his evidence at the hearing on his modification request was entirely not credible while also finding for purposes of Hatchett's request for fees that there was a disparity in the parties' incomes and that he could pay for Hatchett's attorney's fees.

In January 2022, the trial court denied Swan's motion for a new trial and awarded Hatchett about $10,000 in need-based attorney's fees. For Hatchett's fees award, the trial court found there was a documented disparity in the parties' access to funds to pay for legal representation, Swan had or was reasonably likely to have the ability to pay for both parties' attorneys, and Hatchett's fees request was reasonable and necessary.

On the same day, in connection with its denial of Swan's motion for a new trial, the court issued an amended final

statement of decision regarding Swan's modification request. As it had earlier, the trial court denied his request to waive interest on his arrears and his request to modify child support because it found that Swan's evidence of his income was not credible. The trial court also found Swan had not submitted sufficient evidence that his new child caused him a financial hardship warranting modification of support. But the trial court said Swan's gross income in 2018 was about $2.38 million. As for Hatchett's income, the trial court found it would be unjust to modify the support to take her income into account because Hatchett had provided an updated income and expense statement in February 2020 but Swan had not provided once since May 2019. The court found it would be unjust to use the prior finding of Swan's income that supported the existing support order as the basis for a new order because it appeared to the court that Swan's income had increased rather than decreased.

## DISCUSSION

### I. Denial of request to modify child support

"An order of child support 'may be modified or terminated at any time as the court [determines] to be necessary.' (Fam. Code, § 3651, subd. (a).)[1] Statutory procedures for modification of child support 'require a party to introduce admissible evidence of changed circumstances as a necessary predicate for modification.' " (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) "The burden of proof to establish changed circumstances sufficiently material to support an

_____

[1] Undesignated statutory citations are to the Family Code.

10

adjustment in child support rests with the party seeking modification." (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357–358.) " 'Ordinarily, a factual change of circumstances is required [for an order modifying support] (e.g., increase or decrease in either party's income available to pay child support).' [Citation.] 'There are no rigid guidelines for judging whether circumstances have sufficiently changed to warrant a child support modification. So long as the statewide statutory formula support requirements are met (Fam. [Code section] 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in need or ability to pay.' [Citation.] The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court." (*Leonard*, at p. 556, italics omitted.)

"[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*In re Marriage of Leonard, supra*, 119 Cal.App.4th at p. 555.) Under an abuse of discretion standard, we review the trial court's legal conclusions de novo and its factual findings for substantial evidence, and we reverse its application of the law to the facts only if it was arbitrary and capricious. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) "The trial court's exercise of discretion must be 'informed and considered,' [citations] and the court may not 'ignore or contravene the purposes of the law.' " (*Brothers v. Kern* (2007) 154 Cal.App.4th 126, 133.) "Appellate courts 'do not

11

reweigh evidence or reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.)

Swan raises several different arguments on appeal, with his primary contention being that his new child and Hatchett's new income were changed circumstances that obligated the trial court as a matter of law to recalculate the amount of child support even without evidence of his income. He also argues that the trial court erred by refusing to consider any of his evidence. We need not decide whether Swan's new child or Hatchett's new income would have obligated the trial court to recalculate support even in the absence of evidence of Swan's income because we conclude that substantial evidence does not support the trial court's decision to ignore all of his evidence of his income in this case.

The trial court's credibility findings regarding Swan's evidence would normally be conclusive because on substantial evidence review we generally do not second guess the trial court's assessment of the credibility of witnesses or documentary evidence. (*In re Marriage of Balcof, supra*, 141 Cal.App.4th at p. 1531; *People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. 7 ["when reviewing a ruling under the substantial evidence standard, 'an appellate court should defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations' "].) Swan argues his tax returns were presumptively correct and neither Hatchett nor the department submitted evidence rebutting the presumption, so the trial court was obligated to use them. The trial court

followed *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 540–
541, 544–545, which held that even if the presumption existed, it
did not apply to the tax returns of two corporations with
intertwined operations, both of which were wholly owned by a
self-employed parent. We agree with *Hein*'s reasoning and
conclude that the presumption of correctness does not apply to
tax returns of a self-employed parent like Swan, who controls
how income is reported and is responsible for distinguishing
between personal expenses and business expenses that would
reduce available income for child support. The trial court was
therefore not required to credit Swan's tax returns.

The problem here is that the trial court's order and
statement of decision are inconsistent and significantly misstate
the evidence in key respects relevant to its credibility
determination.[2] Although we accept the trial court's individual
credibility determinations, given that the trial court had other
options available to it to address shortcomings in Swan's evidence
for the purposes of calculating child support, we cannot say that
substantial evidence supports its decision to disregard Swan's
evidence in its entirety.

First, the trial court's rejection of all of Swan's testimony
and evidence cannot be squared with its statement that Swan
had gross income in 2018 of about $2.38 million. Nor can it be

---

[2] The trial court's January 2022 order stated that it was
denying Swan's motion for a new trial and, in the alternative,
issuing an amended statement of decision. Swan and the
department both treat the amended statement of decision as the
trial court's final ruling, and we do the same.

squared with the court's statement that Swan's income had increased rather than decreased so that it would be unjust to recalculate support using Swan's income established in the prior order and Hatchett's new income. As the trial court acknowledged, finding Swan's evidence and testimony not credible had the effect " 'of removing that testimony from the evidentiary mix.' " (*Moran v. Foster Wheeler Energy Corp.* (2016) 246 Cal.App.4th 500, 518.) Because neither Hatchett nor the department submitted evidence of Swan's income, if the court had entirely ignored Swan's evidence, it would have had no basis from which to conclude Swan had a specific amount of gross income or that his income had increased.

The only alternative evidence of Swan's income in the record was the income and expense declaration he submitted in late 2021 in connection with Hatchett's request for attorney's fees. It appears the court ignored this declaration for the purposes of Swan's modification request, since it said in its statement of decision that Hatchett had submitted an updated income and expense declaration in 2020 but Swan had not submitted one since May 2019. Nonetheless, the trial court must have relied on Swan's 2021 declaration to find a disparity of resources and Swan's ability to pay Hatchett's attorney's fees, because otherwise there was no evidence to support that award, either. This, too, is inconsistent with the court's rejection of Swan's evidence for his modification request. If the evidence Swan prepared for the modification request was so lacking in credibility as to be worthless, we cannot see why his 2021 income

14

and expense declaration would be more credible. Conversely, if his 2021 declaration was somehow more credible than his earlier evidence, it is hard to understand why the trial court would have ignored it and found no evidence of his income at all for his modification request when it issued its amended statement of decision as part of the same order that granted Hatchett's request for need-based attorney's fees.[3]

In any event, leaving aside the internal inconsistencies within the trial court's statement of decision and between its rulings on the modification request and fees request, the trial court's finding of Swan's 2018 gross income was off by a considerable margin. The trial court said twice in its statement of decision that Swan's tax return showed he had gross income in 2018 of about $2.38 million. The only source for this figure appears to have been the portion of Swan's tax return in which he applied a net operating loss carried forward from prior tax years. But a net operating loss is not income. As reflected elsewhere in his tax return, and as the parties generally agreed at trial, Swan's only source of income that year was his business, whose

---

[3] The trial court may have ignored the later declaration for the purposes of the modification request because Swan submitted it after closing arguments on that matter. But the trial court issued its amended statement of decision under Code of Civil Procedure section 662 in response to Swan's motion for a new trial. That statute allows a court in an action tried without a jury to amend a statement of decision, but it also allows the court to set aside a statement of decision and re-open the case for additional evidence. (Code Civ. Proc., § 662.) The submission of the modification request therefore was no obstacle to considering Swan's later-filed evidence.

actual gross income was about $370,000. The trial court's statement of Swan's gross income was therefore significantly off the mark.

In its closing brief, the department briefly questioned whether Swan might be underreporting his gross income, based on the fact that Swan admitted to taking several international trips but reported only minimal expenses for those trips and could not show where he obtained the funds deposited in his Charles Schwab accounts. The department also alluded to it being difficult to determine if there was actually a change in Swan's income and suggested the correctness of Swan's tax returns was questionable. But both the department and Hatchett still used Swan's stated gross income as the starting point for their calculations of child support, suggesting that they, at least, did not find Swan's testimony and evidence so misleading as to be useless.

The trial court provided several different reasons why it found Swan's testimony not credible in its entirety, including Swan's defensive and evasive demeanor; difficulty recalling basic facts about his unpermitted rental units, tenants, and value of his properties; initial mischaracterization of his rental units as storage units; and his struggle to provide accurate information about his travel and cash commissions he paid to his current partner and mother of his youngest child, who is also one of his employees and living in one of his rental units. Even from a cold transcript, Swan's testimony appears evasive and difficult to credit on many of these points. The trial court could reasonably

have extended its credibility determination to the documents that Swan prepared. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 31, 36 [affirming trial court's drawing of factual inferences adverse to party who submitted misleading and false tax return; rule that a trier of fact can accept as true only part of a witness's testimony and disregard the rest applies to documents prepared by the witness or at his direction].) The department cites Swan's testimony on these topics as support for the trial court's order, but it ignores the trial court's misstatement of Swan's income and the inconsistencies within the trial court's orders. Given the magnitude of the trial court's error on its statement of Swan's gross income—overstating it more than six-fold—we cannot say that substantial evidence supports the trial court's drastic step of entirely disregarding all of Swan's evidence based only on the credibility issues that it highlighted in its order.

The trial court's decision to disregard all of Swan's testimony, a decision apparently without precedent in reported cases as far as we have been able to determine, is striking given that the trial court had other options at its disposal to respond to Swan's credibility problems. As the trial court acknowledged, it could have imputed income to Swan if it did not believe his stated income matched his earning capacity. That is precisely the approach another trial court took with a parent whose attempts to hide assets and income were even more egregious than Swan's.

*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 366–367, 370 (*Barth*), involved an appeal from an initial child support

17

order in which the father was, like Swan, an accountant who prepared his own statements and financial reports in which he categorized expenses. The father included in his business expenses dozens of personal expenses as well as "wages he allegedly paid to his girlfriend without any satisfying evidence to justify the expense." (*Id.* at p. 370.) The trial court believed the father was purposefully vague or evasive and found he failed to disclose material facts, such as a substantial severance package from a former employer and recurring rental income from a property. (*Id.* at p. 369.) It also found the father's professed business expenses were phony or personal and that the father "was not to be believed on any issue relating to his finances." (*Id.* at pp. 370, 377.) In these circumstances, the appellate court concluded the trial "court had no choice but to impute income to [the father] for the purpose of establishing child support." (*Id.* at p. 377.) The appellate court upheld as reasonable the trial court's imputation of income based on a vocational report prepared by the mother's expert and the addition of estimates of various items of income father had hidden. (*Id.* at pp. 371, 376–377.)

Given the trial court's lengthy and factually supported reasons for finding aspects of Swan's testimony not credible, the trial court here would have been well within its rights to impute income to Swan, like in *Barth*. Hatchett did not provide a vocational report. But the trial court could have taken other approaches, such as by rejecting non-credible deductions Swan made from his gross income to calculate his net income. For example, if it found Swan's payments to his new partner to be not

18

credible and viewed them instead as an improper attempt to hide his income, it could have rejected some or all of those deductions and included them when calculating his income.  (*In re Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 36 ["the trial court could credit father's indication of gross income and disregard his indication of expenses necessary to service the properties"].)

Similarly, if the trial court believed Swan was improperly claiming personal expenses to be business expenses, it could have added an amount for the improper deductions back to Swan's income.  (See *In re Marriage of Rodriguez* (2018) 23 Cal.App.5th 625, 635 & fn. 11 [trial court properly ignored vehicular depreciation deduction from self-employed parent's tax return because it did not reduce monthly income from the business].)  If the trial court believed Swan's standard of living did not match his claimed expenses and disbelieved his explanation that clients he could not recall had paid for his trips, it could have imputed to him the income necessary for him to have paid such expenses. (Cf. *Barth*, *supra*, 210 Cal.App.4th at p. 370 [trial court found father understated his expenses in order to match his understatements of income].)  To be sure, the trial court would have needed to use estimates for some of these figures, given the credibility problems of Swan's evidence.  But having failed to provide credible evidence of his overall income, Swan would have had little grounds to complain if the trial court could not precisely calculate specific aspects of his income.

19

The availability of the options *Barth* endorsed confirms that the trial court's refusal to calculate Swan's income entirely must have been based on more than a simple difficulty crediting aspects of his testimony about how he calculated his net income from his business's gross income. The court's mistaken belief that Swan had understated his income by almost $2 million must have played a significant role in its decision. The effect of the trial court's refusal to consider Swan's evidence was ultimately to exclude entirely Hatchett's income from the calculation of child support, contrary to the policies in section 4053 that both parents are responsible for their children's support, child support is calculated based on each parent's actual income, and each parent should pay for the support of the children according to the parent's ability. (§ 4053, subds. (c)–(e); see also *Brothers v. Kern*, *supra*, 154 Cal.App.4th at p. 133 [trial court's exercise of its discretion to modify support may not " 'ignore or contravene the purposes of the law' "].) As a result, and because the trial court's treatment of Swan's evidence was inconsistent both within its statement of decision and between its denial of his request to modify support and grant of Hatchett's request for attorney's fees, we cannot say that substantial evidence supports the trial court's choice to ignore all of Swan's evidence for his modification request.

**II. Award of attorney's fees to Hatchett**

We review the trial court's attorney's fees award for abuse of discretion. (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532 [reviewing award under § 2030].)[4]

The same problems affecting the trial court's denial of Swan's modification request also undermine its award of need-based attorney's fees to Hatchett. As noted *ante*, we cannot reconcile the trial court's two different assessments of Swan's evidence on the same day for the purposes of his modification request and Hatchett's fees request. The trial court could not logically rely on Swan's income and expense declaration to award attorney's fees while simultaneously finding Swan's testimony and evidence of his income in the modification proceeding to be not credible in its entirety. Swan's evidence in the modification proceeding was much more detailed than his income and expense declaration, but both were based on Swan's own calculations of his revenue and business expenses. And if the trial court did disregard Swan's evidence entirely for both requests, then it

---

[4] Neither Hatchett nor the court identified the specific statute authorizing an award of need-based fees in this matter. Swan assumed at the hearing that Hatchett's request was based on section 2030, which authorizes an award of need-based fees "[i]n a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment." (§ 2030, subd. (a)(1).) Hatchett did not disagree. The choice of statute is irrelevant to our analysis, which turns on the contradictions in the court's factual findings.

21

lacked any factual basis to find Swan had greater resources than Hatchett and could pay for her legal representation.

Hatchett argued at the hearing that even if the trial court could not make a finding of Swan's precise income for child support, it could still find that Swan had more income and resources than Hatchett.[5] This argument ignores the fact that the trial court's credibility finding should have eliminated Swan's evidence in its entirety. The point of the trial court's modification order was not that Swan's evidence was too vague to permit a calculation, it was that Swan's evidence was so lacking in credibility that it was essentially no evidence at all. Besides, even if Hatchett were correct about this, the trial court found specifically that Swan had or could reasonably be expected to have the ability to pay about $10,000 of Hatchett's fees. Such a finding essentially required the court to put some kind of number on Swan's income, a calculation that the trial court claimed was impossible even with Swan's earlier, more detailed evidence.

### III. Interest on support arrears

Swan briefly contends the trial court erred by refusing to rule on the merits of his request to waive interest on some of his child support arrears. We need not discuss the factual background for Swan's request or the particulars of his argument on appeal because the trial court lacked authority to waive the arrears. (*In re Marriage of Hubner* (2004) 124 Cal.App.4th 1082, 1089 ["notwithstanding changed circumstances, or a claimed lack

---

[5] Hatchett did not file a respondent's brief.

of clarity in a court's order assessing child support arrearages, courts have no authority to waive or forgive interest accrued on past-due child support amounts"].)  Swan does not explain how the trial court could have waived interest on his arrears despite this black-letter law.

## DISPOSITION

The juvenile court's orders are reversed.  The matter is remanded for further proceedings not inconsistent with this opinion.  We express no opinion regarding the outcome of the proceedings on remand.  The parties shall bear their own costs on appeal.


BROWN, P. J.



WE CONCUR:


STREETER, J.
GOLDMAN, J.


*Swan v. Hatchett* (A163825, A164764)

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Toni Y. Mims-Cochran

Counsel:            Law Office of Stephanie J. Finelli and
                    Stephanie J. Finelli for Appellant.

                    Krystle Hatchett, in pro. per., for Respondent
                    Krystle Hatchett.

                    Rob Bonta, Attorney General, Cheryl L. Feiner,
                    Assistant Attorney General, Maureen C.
                    Onyeagbako and Jennifer C. Addams, Deputy
                    Attorneys General, for Respondent Alameda
                    County Department of Child Support Services.